*Lindsay, for appellant.*

*Attorney-General, for appellee.*

---

J. R. A. Alexander's Ex'rs *v.* The Airdree Coal Co. et al.

**Mines and Minerals—Forfeiture of Stock to Lessor.**

Where, by the terms of an agreement between the lessor and the lessee, a mining company, the stock of the company is forfeited to the lessor, the latter succeeded to the rights of the company, and took the lease subject to the liens legally created before the forfeiture.

**Estoppel—Relief Prejudicial to Mortgagee and Bondholders of Company.**

One who holds a majority of the stock of a corporation and has control over the management of the corporation, is estopped to assert relief prejudicial to the rights of a mortgagee and the bondholders of the corporation.

APPEAL FROM MUHLENBERG CIRCUIT COURT.

December 5, 1873.

OPINION BY JUDGE LINDSAY:

There is no condition of forfeiture in the lease from Alexander to the Airdree Coal and Iron Company. By a supplemental agreement, a certain portion of the capital stock was pledged to Alexander to secure the payment of the purchase price of personal property owned by him, and which the company had the right to, and did take at its appraised value. Besides this, it was agreed that all the capital stock, other than that owned by him, should be forfeited to him, if the company did not, within two years, commence in good faith to carry out the purposes and intentions for which it was formed. This supplemental agreement seems never to have been fully executed and recorded, but whether it was or not, it can exercise but little influence in the settlement of the questions involved in this controversy.

The rights, privileges and immunities secured to the company, were the subject of bargain and sale; and hence the mortgage to Elliott and Riggs invested them with the legal title to such interest in the leased lands as was held and owned by the company, under its lease from Alexander. Upon the faith of this mortgage, the bonds of the company were sold, and the moneys realized from the sales paid over to its officers, and by them expended.

At the time this was being done, Alexander owned a majority of the capital stock, and could, had he chosen to do so, have controlled the operations of the company, and directed the expenditure of the moneys raised upon the mortgage. He asks now that the lease be annulled, and insists that the rights of the mortgagees are subordinate to his own, claiming that the failure of the company to use proper diligence in the prosecution of the business for which the lands were leased, has operated in equity, as a forfeiture of all its rights to him.

The stipulation in the supplemental agreement is that all the capital stock, owned by others than himself, should be forfeited to him upon a given contingency. If it be conceded, and this is the most that can be claimed, that the forfeiture of all the capital stock to the lessor practically terminated the existence of

the corporation aggregate, it by no means follows that he could take, receive and hold the forfeited stock, become the sole owner of all the property of the corporation, and at the same time hold it free from the liens and charges upon it, existing at the time when, by reason of the forfeiture of the stock, the title to such property passed to him.

The company had the right to create the mortgage lien. Alexander, by reason of the alleged forfeiture of the capital stock, succeeded to the rights of the company. He took the lease subject to the liens, legally created, before the forfeiture. If there was any doubt as to the correctness of this conclusion under ordinary circumstances, there could be none under the facts of this case.

Appellants seek to annul the lease and defeat the mortgages, because the company did not prosecute its work with proper diligence. Now, if this be true, it is clear that those asking relief are as culpable as any one, or in fact, as all others interested in the company as stockholders. Alexander owned a controlling majority of the stock. It was within his power to change the directory, at the annual elections, had he chosen to do so. There is no allegation that Buell, the president, did anything to defeat him in the exercise of this power. Upon the contrary, the proof shows that Alexander up to the time of his death, and afterwards his executors, was regularly notified of the time and place at which the annual meetings of the stockholders were to be held. These notices were disregarded; or, if the meetings were attended, no steps were taken to remove from office those whom it is now complained were remiss in the discharge of their duties, to such an extent as to entitle the lessor to have the lease vacated.

It follows, therefore, as matter of fact, that Buell and his associates were not only the directors of the corporation, but were the agents of the stockholders now complaining, elected by him and permitted to remain in office by his failure to exercise his power to remove them. Such being the case, he is estopped upon the plainest principles of equity, to ask any character of relief, prejudicial to the rights of the mortgagee and the holders of the bonds of the corporation.

The lease secured to Alexander was no lien on the property of the company for the payment of the rents of such of his

houses and tenants as it might choose to use and occupy. Appellants lost their landlord's lien for the last year's rent, by failing to commence proceedings for more than four months after it became due. The company had possession of the personal property purchased from Alexander, under a contract of purchase, at the time the mortgage was executed to Elliott & Riggs. Their lien upon that property cannot therefore be successfully controverted.

The supplemental agreement provides that the movable property purchased by the company should be valued, and a promissory note executed for the value, payable in five years, with interest. The time from which the interest was to run is not stated, but the natural presumption is that it should run from the date of the valuation. This was made in July, 1868, and interest is allowed from that date. If a note was executed providing differently, appellant should have filed it with their petition.

We perceive no error in the judgment of the court below. We appreciate the difficulties likely to result to appellants from the condition in which the judgment will leave the leased premises, but these difficulties result from the contract voluntarily entered into by their intestate, and from his failure to exercise the power possessed by him, to direct the management of the corporation to which he executed the lease. The courts can not relieve against such hardships. Judgement affirmed.

*Lindsay, for appellants.*

*Eaves, for appellees.*